J-S22021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :           PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| PAUL TYRONE OWENS | : |
| | : |
| Appellant | : No. 2721 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 18, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0005089-2024

BEFORE:    PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                          **FILED JULY 29, 2026**

Paul Tyrone Owens ("Owens") appeals from the judgment of sentence

imposed following his jury conviction of invasion of privacy.[1]  We affirm.

The Commonwealth charged Owens with invasion of privacy and related

offenses.  The charges proceeded to a jury trial in April 2025.  The victim,

Alice Garcia-Beaty (the "Victim"), testified as follows:

> [The Victim] was shopping at PacSun inside the King of Prussia
> Mall and noticed a male, later identified as [Owens, watching her
> for approximately ten minutes] while she was browsing . . . .
>
>          * * * *
>
>     [Later, as] the [V]ictim was inside the dressing room trying
> on a bathing suit, she saw [Owens'] face and eyes in the space at
> the bottom of the dressing room door, holding his phone in his
> hand and pointing it toward her through the gap at the bottom of
> the door.  . . .

---

[1] **See** 18 Pa.C.S.A. § 7507.1(a)(2).

The [V]ictim testified that . . . her intimate parts (buttocks and/or breasts) were exposed [and] she tried to cover herself. She asked [Owens] what he was doing and he replied that he had dropped his keys. [Owens] then ran off. The [V]ictim testified at trial that she did not observe any keys . . . and did not hear any keys drop on the ground. . . .

The [V]ictim . . . reported the incident to store personnel, who alerted mall security. . . . The [V]ictim testified that she felt violated by this incident.

Trial Court Opinion, 12/17/25, at 2-4 (record citations omitted).

The Commonwealth presented two Upper Merion Township Police detectives who investigated the incident. Detective Alex Clark testified that she interviewed the Victim at the police station and reviewed mall surveillance footage, which showed Owens walking in the direction of PacSun and later leaving the store. Detective Michael Davis testified that he measured the distance between the floor and the bottom of the fitting room door to be twelve inches. Additionally, the Commonwealth played a video of the statement that Owens gave to Detective Davis at the police station.

Owens testified in his own defense to the following. On the day in question, a store employee opened a dressing room for Owens to try on clothing. Owens did not know whether another customer was in the dressing room area. As he left the dressing room, he "tripped over" "a stool that was holding open the door." N.T., 4/10/25, at 122. "[B]y accident [his] knee hit the stool," and he "stumbled" and dropped his keys. *Id*. Owens testified: "[W]hen I dropped my keys, I was able to see someone was in the room next to me and I decided to look up." *Id*. The following exchange occurred:

- 2 -

[Defense counsel:] What did you see at that point?

[Owens:] I just seen legs [*sic*].

Q. So what did you do?

A. I just took a further look.

*Id*. at 123. Owens left the dressing room, tried to talk to a store employee "to explain" but did not see one, went out of the store to find a mall security guard but likewise did not see one, and returned to the store, but the store employee did not "want to hear anything [he] wanted to say." *Id*. at 125-26.

Owens further testified that after leaving the mall, he called the store "because [he] knew something happened and [he] didn't want them to get on [his] tail [*sic*]." *Id*. at 127 (unnecessary capitalization omitted). A mall security guard asked him to return to the store, and Owens agreed. Owens met with a police officer in the mall parking lot and agreed to show his phone and to go to the police station to give a statement. *See id*. at 129. Owens denied that he looked or glanced at the Victim for sexual gratification, but instead it was an "impulse." *Id*. at 132-33 (unnecessary capitalization omitted).

On cross-examination, Owens acknowledged that the Victim's dressing room door was closed, but maintained that the spaces above and below the door were "open." N.T., 4/10/25, at 136. Additionally, he acknowledged that in his statement to police, he said, "[T]his was an honest, stupid, perverted mistake." *Id*. at 138.

The jury found Owens guilty of invasion of privacy. On September 18, 2025, the trial court imposed a sentence of one year of probation.[2] Owens did not file a post-sentence motion, but he filed a timely notice of appeal. He and the trial court have complied with Pa.R.A.P. 1925.

Owens raises the following issue for our review: "Whether the evidence at trial was insufficient to sustain a conviction for invasion of privacy." Owens' Brief at 3 (unnecessary capitalization omitted).

Owens argues that the Commonwealth failed to present sufficient evidence to prove he intentionally looked at the Victim for the purpose of sexual arousal or gratification, an essential element of invasion of privacy. When reviewing a challenge to the sufficiency of the evidence, this Court applies the following standard of review:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the factfinder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt

---

[2] The trial court found Owens was not a sexually violent predator under the Sexual Offender Registration and Notification Act, but directed him to comply with registration as a Tier I offender for fifteen years. *See* 42 Pa.C.S.A. §§ 9799.10-9799.75.

- 4 -

about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Duncan***, 314 A.3d 556, 564-65 (Pa. Super. 2024).

(citations omitted)

The Crimes Code defines the offense of invasion of privacy as follows:

**(a)   *Offense defined.* —** Except as set forth in subsection (d), a person commits the offense of invasion of privacy if he, for the purpose of arousing or gratifying the sexual desire of any person, knowingly does any of the following:

* * * *

(2)   Photographs, videotapes, electronically depicts, films or otherwise records or personally views the intimate parts, whether or not covered by clothing, of another person without that person's knowledge and consent and which intimate parts that person does not intend to be visible by normal public observation.

18 Pa.C.S.A. § 7507.1(a)(2).

The statute further defines key terms relevant to the offense:

**"*Intimate part.*" —** Any part of: (1) the human genitals, pubic area or buttocks . . . .

* * * *

**"*Views.*" —** Looking upon another person with unaided eye or with any device designed or intended to improve visual acuity.

18 Pa.C.S.A. § 7507.1(e).

Owens avers that the evidence was insufficient to prove beyond a reasonable doubt that he viewed the Victim for the purpose of arousing or gratifying sexual desire, an essential element of invasion of privacy. He

contends that his observation of the Victim was accidental, explaining that he dropped his keys, bent down to retrieve them, and "inadvertently and reflexively looked under the dressing room door." Owens' Brief at 12. Owens maintains that the Commonwealth presented no evidence of sexual motivation. He points to his: (1) lack of inappropriate comments, (2) voluntary return to the mall, (3) cooperation with law enforcement, and (4) consent to a search of his cellphone. Furthermore, he highlights the absence of any photographs on his phone of the Victim. Accordingly, Owens requests that this Court vacate his conviction and judgment of sentence.

The Commonwealth responds that it may prove intent through circumstantial evidence and the jury could have reasonably inferred from Owens' actions and the surrounding circumstances that his conduct was intentional and sexually motivated. The Commonwealth further argues that the jury was entitled to reject Owens' explanation and, viewing the evidence in the light most favorable to it as the verdict winner, conclude that the evidence was sufficient to establish invasion of privacy.

The trial court concluded that the evidence was sufficient for the jury to find beyond a reasonable doubt that Owens committed invasion of privacy. It reasoned that Owens' deliberate actions and the surrounding circumstances were sufficient to allow the jury to find that he looked at the Victim for the purpose of arousing or gratifying his sexual desire:

> If [Owens] dropped his keys outside the [V]ictim's dressing room, then he could have simply picked up his keys and left.

Instead, he actively took the next step to crouch down lower and look inside the [V]ictim's dressing room from the space at the bottom of the door, knowing that she was in there. He did not have to look into the dressing room **after** he allegedly picked up his keys. . . . He testified that his "impulse" guided him to take another look and bend down further to view inside the dressing room[. Owens] explained what he meant by "impulse" — that when you see that a door is open you look in. However, the door to the [V]ictim's dressing room was closed and locked; the door was not open. The space at the bottom of the door was not for the purpose of allowing a person to see inside the dressing room. [Owens] testified that his main purpose in looking at the [V]ictim was to get his keys, and his second purpose was to take a glance at her after seeing the opportunity to do so . . . .

. . . The evidence supports the finding that [Owens'] intent in viewing the [V]ictim from the space below the door was for his own sexual arousal or gratification. . . .

Trial Court Opinion, 12/17/25, at 9-10 (emphasis in original).

Viewing the evidence admitted at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient to support the jury's conviction. *See Duncan*, 314 A.3d at 564-65. Owens conceded that, after seeing someone's legs under the dressing room door, he purposefully "took a further look" and consequently observed the Victim's naked body. N.T., 4/10/25, at 122-23. He described this conduct to the police as a "perverted mistake." *Id*. at 138. Additionally, although Owens testified that he initially bent down to retrieve his keys, the Victim testified that she did not see or hear any keys. After hearing the testimony and watching the video of Owens' statement to Detective Davis, the jury was free to infer that Owens intentionally viewed the Victim's intimate parts for the purpose of sexual

arousal or gratification. *See* 18 Pa.C.S.A. § 7507.1(a)(2); *Duncan*, 314 A.3d at 564-65. Owens' argument, that this Court should credit his explanation that the encounter was accidental, asks us to reweigh the evidence, which our standard of review does not permit. *See id*.

For the foregoing reasons, we conclude Owens' challenge to the sufficiency of the evidence merits no relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2026

- 8 -